

$400

**JS**

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **ALLISON OLER,** as co-administrator of the : <br> **ESTATE OF JACQUELINE OLER, Deceased** : <br> 777 Periwinkle Lane : <br> Gladwyne, Pa. 19035 : <br>     **and** : <br> **ADAM Oler,** as co-Administrator of the : <br> **Estate of JACQUELINE OLER, Deceased** : <br> 1620 Hunting Creek Drive : <br> Alexandria, Va. 22314 : <br>                **Plaintiffs** : <br>    **vs.** : <br> : <br> : <br> **BALA CYNWYD OPERATING, LP** : <br> d/b/a **Symphony Square at Bala** : <br> 6300 Blair Hill Lane : <br> Baltimore, MD 21209 : <br>             Defendant : | **CIVIL ACTION** <br><br> **NO.** <br><br><br><br> 18    2126 |

### CIVIL ACTION COMPLAINT

Plaintiffs, Allison Oler and Adam Oler, as co-representatives of the Estate of Jacqueline Oler (Deceased), file the instant Complaint against Defendant, Bala Cynwyd Operating, LP and states as follows:

**I.     PARTIES**

1.     Plaintiff, Allison Oler, co-administrator of the Estate of Jacqueline Oler (Deceased) is an adult individual residing at the above-captioned address.

2.     Plaintiff, Adam Oler,  co-administrator of the Estate of Jacqueline Oler (Deceased) is an adult individual residing at the above-captioned address.

3.     Defendant, Bala Cynwyd Operating, LP is a limited liability corporation existing, operating, and doing business under the laws of the Commonwealth of Pennsylvania which maintains its principal place of business at the above-captioned address.

**II.    JURISDICTION AND VENUE**

4.      At all times material hereto, Defendant Bala Cynwyd Operating, LP, owned, maintained, operated and controlled an assisted living facility for seniors called Symphony Square at Bala located at 35 Old Lancaster Road, Bala Cynwyd, Pa. 19004.

5.      This Court has personal jurisdiction over Defendant because the causes of action asserted herein arose out of the Defendants' contacts with this state. Defendants also conducted business in the State of Pennsylvania and the causes of action asserted herein arose from and are connected to purposeful acts taken by Defendant in Pennsylvania. Defendant's contacts with Pennsylvania were continuous and systematic.

6.      Pursuant to 28 U.S.C. §1332, this Court has jurisdiction over this case because it is a lawsuit between parties of diverse citizenship and the amount in controversy exceeds $75,000. Venue is proper in this Court because the causes of action asserted herein arose in Pennsylvania.

**III.   FACTS**

7.      Plaintiffs are asserting a professional liability claim against Defendant.

8.      At all times material hereto, this Defendant employed as its real and/or ostensible agents, servants and/or employees, any and all physicians, residents, interns, nurses, healthcare providers and medical staff, some of whom participated in and rendered medical care to the Plaintiff from June 30, 2015 through October 10, 2016.

9.      At all times relevant hereto, a physician-patient and/or healthcare provider-patient relationship existed between Defendant and Jacqueline Oler (Deceased).

10.     At all times relevant hereto, Defendant, had constructive knowledge of the full nature and extent of the acts and/or omissions relating to the treatment in questions, as referenced more fully herein.

11.     At all times relevant hereto, Defendant was engaged in the provision of medical care and services to Decedent, Jacqueline Oler and, in doing so, was acting individually, and/or by and through its' agents, servants, and/or employees who were at all times acting within the course and scope of their agency, servant, and/or employment relationship with Defendant and in furtherance of Defendant's business purpose.

12.     At all times relevant hereto, Defendant provided medical care, treatment, and services to Jacqueline Oler (Deceased) and, in doing so, was obligated by a duty of care to bring to bear professional knowledge, skill and care in accordance with safe, prudent, and acceptable standards of medicine, nursing and therapy.

13.     Plaintiff's injuries and damages were caused solely and exclusively by the negligence and carelessness of the Defendant, and/or of its' actual agents, apparent agents, and/or ostensible agents, servants, and/or employees, individually, jointly, and severally, and were not caused or contributed to by any act or failure to act on the part of the Plaintiffs or the Decedent, Jacqueline Oler.

14.     Consequently, Defendants are vicariously liable under and by virtue of the laws of agency of the Commonwealth of Pennsylvania for any and all negligent acts and/or omissions committed by any and all persons, as well as any other real and/or ostensible agents, servants, and/or employees of the assisted living facility who rendered medical care to the Decedent, Jacqueline Oler, and who failed to properly assess her fall risk and implement the proper fall precautions and which failures were the cause in fact of her traumatic fracture which occurred sometime between  October 9, 2016 or October 10, 2016 while she was a patient at Symphony Square at Bala.

15.     Within the body of this Complaint, Plaintiff will more specifically identify the conduct which Plaintiff avers to be at issue with respect to real and/or ostensible agents, servants and/or

employees of this Defendant, including but not limited to the medical professionals and/or agents or employees whose names and/or signatures appear in decedent's medical chart from June 30, 2015 through October 10, 2016.

16.     Plaintiff will ascertain through the issuance of discovery the exact names of the real and/or ostensible agents, servants, and/or employees of the rehabilitation facility, whose negligence caused Decedent's traumatic fracture.

17.     At all times relevant hereto, Defendant acted by and through its agents, servants, workers, and/or employees, actual, apparent, and/or ostensible, who were then and there acting fully within the course and scope of their employment, within the scope of their authority, in furtherance of the Defendant's businesses and on behalf of the Defendant, and/or Defendant acted by and through other persons for whose acts and/or omissions they are responsible.

18.     Defendant is liable for the acts and/or omissions of its agents, servants, workers, and/or employees, including but not limited to the individuals who cared for the Decedent, Jacqueline Oler from June 30, 2015 through October 10, 2016, who Plaintiff believes to be but are not limited to Angela Brown, Lou White, RN, LPN Abramson, A. Bocelli, R.N., and R. Lafontant, LPN, and Courtney Ercole, whose names and/or signatures appear in the records.

19.     For a long time prior to October 9, 2016 or October, 10, 2016 Jacqueline Oler, Deceased, was a resident of at Symphony Square and was unable to ambulate on her own, and was totally dependent on the assistance of the nursing staff, including nursing assistants, to transfer her as needed from place to place.

20.     Despite the medical needs of its resident patients such as Jacqueline Oler, (Deceased) Defendant was understaffed with the required number of properly trained employees and nurse case managers and other medical supervisors in order to meet the needs of its patients.

21.     As a result of its staffing problems and deficiencies Defendant was unable to properly develop, establish, implement and monitor a fall safety protocol for the benefit of its patients and residents.

22.     At all times relevant hereto, Defendants by and through the above-referenced medical providers did fail to institute adequate fall precautions within the standard of care for admitted patients, including Jacqueline Oler, (Deceased).

23.     On or about October 9, 2016 or October, 10, 2016 Jacqueline Oler, deceased was caused to fall and/or was dropped and/or was mishandled by an employee of Defendant while an inpatient at Symphony Square at Bala.

24.     As a result of falling and/or being dropped and/or being mishandled by Defendant's employees, Jacqueline Oler, (Deceased) sustained an obvious deformity to her leg which was an acute left femoral shaft fracture with angulated displacement causing extreme pain, such that emergent medical care including an ambulance and surgery were immediately required.

25.     As soon as Defendant carelessly allowed Jacqueline Oler, (Deceased) to fall and/or dropped her, and/or mishandled her, Defendant knew or should have known that her angulated left femoral shaft fracture was obvious and serious and required urgent medical care.

26.     Despite its' direct knowledge of Decedent's angulated left femoral shaft fracture resulting from falling, being dropped or mishandled, Defendant failed to promptly record the injury in Decedent's medical chart.

27.     Despite its' direct knowledge of Decedent's angulated left femoral shaft fracture resulting from falling, being dropped or mishandled, Defendant failed to report the existence of same to anyone.

28.     In fact, Defendant, by and through its' employees and agents intentionally hid and concealed the fact that Jacqueline Oler (Deceased) had suffered an angulated left femoral shaft fracture for many hours.

29.     By hiding and concealing the fact that Defendant dropped Decedent and/or allowed her to fall and/or mishandled her, Jacqueline Oler (Deceased) was deprived of her right to receive urgent and immediate medical care to evaluate and treat her angulated left femoral shaft fracture despite her cries for help while tears were running down her face.

30.     Thereafter, Defendant allowed Jacqueline Oler (Decedent) to suffer in extreme pain without calling for any medical care including an ambulance for many hours.

31.     Defendant's effort to hide and conceal the fact that Jacqueline Oler, (Deceased) had suffered a significant femoral shaft fracture as a result of being dropped, falling or mishandled, and thereafter to substantially delay calling an ambulance while Decedent was crying in pain was **intentional**, **malicious**, **wanton**, **reckless**, **grossly negligent**, **cruel, abusive and highly outrageous**.

## IV.     CAUSES OF ACTIONS

### COUNT I - NEGLIGENCE
### ADAM OLER AND ALLISON OLER AS CO-REPRESENTATIVES OF THE ESTATE OF JACQUELINE OLER (Deceased) v. BALA CYNWYD OPERATING, LP

32.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-31 as if same were set forth at length herein.

33.     The Plaintiffs and Decedent's aforesaid injuries, expenses, losses and damages were the result of the negligence and carelessness and recklessness of Defendant, its agents, servants, workers and/or employees, actual, apparent, ostensible and/or others for whose acts or omissions it is responsible.

34.     The aforementioned negligence and carelessness and recklessness of Defendant,

its' agents, servants, workers and/or employees, actual, apparent, ostensible and/or others for

whom Defendant is responsible consisted of the following, *inter alia*:

(a)     failing to render and provide reasonable medical care under the circumstances such that Decedent was dropped or mishandled and/or not protected from falling or mishandled;

(b)     failing to timely correct deficiencies in patient care, staffing and fall protection;

(c)     failing to conform to the requisite standard of reasonable medical to patients such as Jacqueline Oler, Deceased and/or not protecting Jacqueline Oler plaintiff from falling;

(d)     failing to exercise the degree of skill required by a medical professional under the circumstances such that Decedent, Jacqueline Oler was dropped or mishandled and/or not protected from falling;

(e)     failing to properly recognize, diagnose and treat appropriately the condition of the Decedent, Jacqueline Oler before during and after her fall on 10-9-16 or 10-10-16 such that she would not be dropped or mishandled or protected from falling;

(f)     failing to institute all proper and appropriate fall precautions, such as bed alarms, floor alarms, floor pad, floor mats, raising/elevating bed rails, having the call bell or call bulb within reach, having a commode available and all other fall precautions to be determined through the course of litigation herein;

(g)     failing to arm/activate the decedent's bed alarm or floor mat when Defendant knew or should have known that same was required under the circumstances;

(h)     failing to formulate, prepare, and institute a reassurance and appropriate fall precaution policy and procedure;

(i)     failing to document Decedent, Jacqueline Oler's chart confirming that fall precautions had been instituted and what fall precautions were being implemented;

(j)     failing to advise family members and staff that Jacqueline Oler, (Deceased) had fallen in the past and that fall safety protocol implementation was lacking and should be upgraded or modified;

(k)     failing to adequately evaluate Decedent, Jacqueline Oler's chart in order to determine that she required fall precautions including a bed rail, bed alarm, mat alarm, alarm bulb, two patient transfer or Hoyer lift;

(l)     failing to initiate proper protocols to transfer Jacqueline Oler (Deceased) from place to place;

(m)     failing to initiate a two person assist when transferring Jacqueline Oler (Deceased) from place to place;

(n)   failing to adequately monitor the Jacqueline Oler (Deceased) under the circumstances especially in light of the fact that she was non-ambulatory and required two-person assist to wash, toilet and change;

(o)   failure to manage the Decedent, Jacqueline Oler's medical care so that she would be protected from falling and/or not dropped or mishandled by staff;

(p)   failing to follow adequate policies and procedures to treat patients such as the Decedent, Jacqueline Oler with fall precautions;

(q)   failing to inform Decedent, Jacqueline Oler and staff that she required fall precautions;

(r)   failing to monitor its staff to determine if appropriate fall precautions for a non-ambulatory and impaired residents such as Decedent, Jacqueline Oler were being followed;

(s)   failing to use due care under the circumstances;

(t)   failing to hire, engage, train and employ appropriate and qualified medical professionals to treat and care for non-ambulatory patients such as Decedent, Jacqueline Oler;

(u)   failing to monitor, supervise and review employee medical care providers including nurses and nursing assistants, so that there was adequate care being provided to non-ambulatory patients such as Jacqueline Oler, Deceased;

(v)   failing to follow the settled practices for proper treatment, precaution and diagnosis of non-ambulatory patients such as Decedent, under the circumstances, having due regard for the advanced state of the art at the time of the treatment;

(w)   failing to render appropriate and/or proper medical care and treatment under the circumstances, thereby substantially increasing the risk of harm that Decedent would be dropped or mishandled and/or fall and suffer great injury;

(x)   failing to establish and follow procedures for the timely and emergent evaluation and treatment of patients like the Plaintiff who had fallen, been dropped or mishandled and suffered obvious injury;

(y)   failure to use reasonable care in the maintenance of safe and adequate facilities and equipment such as bed-rails and fall mats and call bells and bulbs;

(z)   failing to oversee all persons who practice medicine within its walls as to assure adequate patient care; and

(aa)   failing to formulate, adopt and enforce adequate rules and policies to ensure quality of care for patients and residents;

(bb)   failing to hire sufficient numbers of nurses and nursing assistants and nurse care supervisors to safely manage and properly care for all patient residents at Symphony Square at Bala including Decedent, Jacqueline Oler;

(cc)   failing to train nurses and nurse case managers and nursing assistants to care for all patients and to terminate employees when required to protect residents and patients;

(dd)   Failing to transport patients, answer patients' call lights and requests;

(ee)    Failing to report observations of the patients to nursing supervisor including those who had suffered obvious injury;

(ff)    violating 55 PA. Code Section 2800.16 (3) pertaining to an injury or illness or requiring treatment at a hospital;

(gg)    violating 55 PA. Code Section 2800.16 (20) pertaining to an absence of staff so that residents receive inadequate care as defined by the respective resident's support plan;

(hh)    violating 55 PA. Code Section 2800.16 (b) pertaining to developing and implementing written policies and procedures on prevention, reporting, notification, investigation and management of reportable incidents and conditions; and

(ii)    violating 55 Pa. Code section 2800.60 (a) and (b) regarding appropriate staffing.

35.    At the time of her traumatic left femoral shaft fracture referred to above, Jacqueline Oler Deceased) was non-ambulatory, and required assistance from a nurses or nursing assistants to transfer from place to place.

36.    As such, decedent's traumatic left femoral shaft fracture is the kind of event that ordinarily does not happen in the absence of negligence,

37.    The conduct of the Decedent and third persons other than Defendant are eliminated as a factual cause of decedent's fracture.

38.    Failing to prevent decedent from sustaining a traumatic left femoral shaft fracture is the type of negligence which is within the scope of Defendant's duty to Jacqueline Oler (Deceased) to guard against.

39.    As such, where Defendant has also willfully and intentionally concealed the facts concerning the happening of Plaintiff's accident, negligence against the Defendant in this case can be inferred.

40.    Due Defendant's recklessness, carelessness, and negligence as set forth above, Jacqueline Oler (Deceased) suffered severe and permanent injuries including, but not limited to: acute left femoral shaft fracture with angulated displacement, extreme pain, withholding of pain

reliving medications, withholding of emergency medical attention, undergoing open reduction and internal fixation surgery to treat and stabilize a left femoral shaft fracture, severe aches, pains, scarring, shock to her entire nervous system, exacerbation of all known and unknown pre-existing medical conditions, subsequent placement in a hospital and nursing home,  loss of appetite, failure to thrive and death.

41.     As a further result of the said incident caused by the negligence, reckless and carelessness of the Defendant, including Defendant's withholding of emergent medical care, Decedent, Jacqueline Oler suffered severe pain, mental anguish, humiliation, and embarrassment, until her death.

42.     As a further result of the said accident, Decedent, Jacqueline Oler was obliged to receive and undergo medical attention, which was reasonable and necessary arising from the aforesaid accident and otherwise incurred various expenditures for the injuries she suffered.

43.     As a further result of the said accident, Plaintiffs and Decedent, Jacqueline Oler have incurred medical expenses that were reasonable, necessary, and causally related to the aforesaid accident related injuries specified at paragraph 43 herein above.

44.     As a further result of the said accident, Plaintiff was unable to attend to her daily activities all to her great financial detriment and loss of life's pleasures.

45.     Solely as a result of the traumatic left femoral fracture and surgery, Jacqueline Oler, Deceased became critically ill, failed to thrive and died.

**WHEREFORE**, Plaintiffs, Allison Oler and Adam Oler Co-representatives of the Estate of Jacqueline Oler, Deceased, demand judgment in their favor and against Defendant **BALA CYNWYD OPERATING, LP,** in an amount in excess of Seventy-Five Thousand ($75,000.00)

Dollars, along with punitive damages equal to 6 times the value of Plaintiff's compensatory damages awarded by a jury, and also including costs of suit and delay damages.

### COUNT II – WRONGFUL DEATH
### ADAM OLER AND ALLISON OLER AS CO-REPRESENTATIVES OF THE ESTATE OF JACQUELINE OLER (Deceased) v. BALA CYNWYD OPERATING, LP

46.     Plaintiffs hereby incorporates Paragraphs 1-45 as if same were set forth at length herein.

47.     Plaintiff brings this wrongful death action pursuant to 42 Pa. C.S. § 8301 and Pa. R.C.P. 2202.

48.     The damages, injury and death of the Decedent were caused by the negligence, carelessness and recklessness of Defendant Bala Cynwyd Operating, LP and/or its servants, workers, and/or employees, actual and/or apparent, and/or others for whose acts or omissions they are responsible, as described above and incorporated herein by reference.

49.     The Decedent left surviving her the following individuals entitled to recover damages on whose behalf this action is brought, to the extent they have suffered a pecuniary loss: Adam Oler and Allison Oler.

50.     By reason of the death of the Decedent, Plaintiffs Adam Oler and Allison Oler have suffered a pecuniary loss, including, but not limited to: the value of the Decedent as a viable, functioning part of the family unit, including her companionship, comfort, affection, security, and nurture.

51.     By reason of the death of the Decedent, Plaintiffs have incurred certain expenses, included but not limited to: funeral and burial expenses, expenses of the administration of the estate, and the Decedent's hospital and/or medical expenses, and lost rent all of which were

necessitated by reason of the aforesaid negligence and carelessness of Defendant, Bala Cynwyd Operating, LP.

52.     The Jacqueline Oler (Deceased) did not bring any action for personal injuries during her lifetime, and no other action for the death of Decedent has been commenced against Defendant, Bala Cynwyd Operating, LP.

**WHEREFORE**, Plaintiffs, Allison Oler and Adam Oler Co-representatives of the Estate of Jacqueline Oler, deceased, demand judgment in their favor and against Defendant, **BALA CYNWYD OPERATING, LP,** in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, along with punitive damages equal to 6 times the value of Plaintiff's compensatory damages awarded by a jury, and also including costs of suit and delay damages.

### COUNT III – SURVIVAL ACTION
### ADAM OLER AND ALLISON OLER AS CO-REPRESENTATIVES OF THE ESTATE OF JACQUELINE OLER (Deceased) v. BALA CYNWYD OPERATING, LP

53.     Plaintiff hereby incorporates Paragraphs 1-52 as if same were set forth at length herein below.

54.     Plaintiff brings this survival action pursuant to 42 Pa. C.S.A. §8302.

55.     The Decedent is survived by her relatives who are entitled to recover damages for her death.

56.     The damages, injury and death of the Decedent, Jacqueline Oler were caused by the negligence, carelessness and recklessness of Defendant, Bala Cynwyd Operating, LP, its agents, servants, workers, and/or employees, actual and/or apparent, and/or others for whose acts or omissions they are responsible, as described above and incorporated herein by reference.

57.     As a direct result of the negligence, carelessness and recklessness described above, Defendant Bala Cynwyd Operating, LP is liable to Plaintiff for damages including, but not limited to:

        (a)    Decedent's pain, suffering, mental anguish and loss of life's pleasures;
        (b)    Decedent's loss of income, support, or other losses;
        (c)    medical bills and expenses; and
        (d)    other loss as provided by law.

58.     The negligence, carelessness and recklessness of Defendant, Bala Cynwyd Operating, LP, its agents, employees and/or servants, as described above, caused the injuries and damages from which the Decedent suffered and ultimately caused her death, including past and future financial losses.

59.     Defendant, Bala Cynwyd Operating, LP is liable for all negligence, carelessness and recklessness committed by its agents, employees and/or servants.

60.     The negligence, carelessness and recklessness of Defendant, Bala Cynwyd Operating, LP described above, resulted in the Decedent, Jacqueline Oler's profound pain, suffering, death and financial loss.

61.     As a result of Defendant, Bala Cynwyd Operating, LP conduct, the Decedent's family has suffered the loss of society, solace, companionship and love, and all other damages recoverable under the law.

**WHEREFORE**, Plaintiffs, Allison Oler and Adam Oler Co-representatives of the Estate of Jacqueline Oler, deceased, demand judgment in their favor and against Defendant **BALA CYNWYD OPERATING, LP,** in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, along with punitive damages equal to 6 times the value of Plaintiff's compensatory damages awarded by a jury, and also including costs of suit and delay damages.

## COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## ADAM OLER AND ALLISON OLER AS CO-REPRESENTATIVES OF THE ESTATE
## OF JACQUELINE OLER (Deceased) v. BALA CYNWYD OPERATING, LP

62.     The preceding paragraphs 1-61 of the Complaint are incorporated by reference as if fully stated herein.

63.     At all times relevant hereto, Jacqueline Oler, (Deceased), was present to witness the events outlined herein as she experienced them including but not limited to a withholding of urgently needed medical care for several hours.

64.     As a result of being deprived of urgently needed medical care, Jacqueline Oler, Deceased, suffered severe emotional distress and associated physical manifestations, but not limited to depression, grief, anxiety, and insomnia.

65.     Furthermore, the negligence and carelessness and recklessness of the Defendant, increased the risk of harm and that increased risk of harm was a factual cause that significantly contributed to the harm sustained by Jacqueline Oler, (Deceased).

**WHEREFORE**, Plaintiffs, Allison Oler and Adam Oler Co-representatives of the Estate of Jacqueline Oler, Deceased, demand judgment in their favor and against Defendant, **BALA CYNWYD OPERATING, LP,** in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, along with punitive damages equal to 6 times the value of Plaintiff's compensatory damages awarded by a jury, and also including costs of suit and delay damages.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ADAM OLER AND ALLISON OLER AS CO-REPRESENTATIVES OF THE ESTATE
## OF JACQUELINE OLER (Deceased) v. BALA CYNWYD OPERATING, LP

66.     The preceding paragraphs 1-65 of the Complaint are incorporated by reference as if fully stated herein.

67.     At all times relevant hereto, Jacqueline Oler, (Deceased), was present to witness the events outlined herein as she experienced them including but not limited to a withholding of urgently needed medical care for several hours.

68.     As a result of being deprived of urgently needed medical care, Jacqueline Oler, (Deceased), suffered severe emotional distress and associated physical manifestations, but not limited to an untreated ankle fracture, depression, grief, anxiety, and insomnia.

69.     Defendant's withholding of urgently needed medical care from Jacqueline Oler (De eased) was intentional, extreme, outrageous and cruel.

70.     Furthermore, the negligence and carelessness and recklessness of the Defendant, increased the risk of harm and that increased risk of harm was a factual cause that significantly contributed to the harm sustained by Jacqueline Oler, (Deceased).

**WHEREFORE**, Plaintiffs, Allison Oler and Adam Oler Co-representatives of the Estate of Jacqueline Oler, deceased, demand judgment in their favor and against Defendant, **BALA CYNWYD OPERATING, LP,** in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, along with punitive damages equal to 6 times the value of Plaintiff's compensatory damages awarded by a jury, and also including costs of suit and delay damages.

### COUNT VI.  PUNITIVE DAMAGES

71.     The preceding paragraphs 1-70 of the Complaint are incorporated by reference as if fully stated herein.

72.     The conduct of Defendants was such that the injury to Plaintiff was inevitable.

73.     The Defendants acted in wanton and reckless disregard of the rights and safety of the Plaintiff by withholding of urgently needed medical care from Jacqueline Oler (Deceased).

74.     By withholding urgently needed medical care from Jacqueline Oler (Deceased), Defendants exhibited conduct that was intentional, extreme, outrageous and cruel

75.     The actions of the Defendants would shock the conscience of this Honorable Court and the finder of fact in this case.

**WHEREFORE**, Plaintiff demands an award of punitive damages against Defendants equal to 6 times the value of Plaintiff's compensatory damages awarded by a jury, and also including costs of suit and delay damages.

## V.     DEMAND FOR JURY TRIAL

76.     The preceding paragraphs 1-75 of the Complaint are incorporated by reference as if fully stated herein.

77.     Plaintiff hereby demands a jury trial on all claims so triable in this action.

**WHEREFORE**, Plaintiff demands an award of punitive damages against Defendants equal to 6 times the value of Plaintiff's compensatory damages awarded by a jury, and also including costs of suit and delay damages.

## VI.     RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants as follows:

a.     Compensatory damages in an amount supported by the evidence at trial;
b.     Damages including: pain, mental anguish, impairment, disfigurement, loss of life's pleasures, reasonable and necessary past medical expenses.
c.     Punitive Damages;
d.     An award for attorney's fees, pre-judgment and post-judgment interest, and costs of suit, as provided by law; and

e.      Such other legal and equitable relief this Court deems just.

COOPER & SCHALL, P.C.

_____

Robert W. Schall, Esquire
Charles S. Cooper, Esquire
Attorneys for Co-plaintiffs
Jacqueline Oler and Adam Oler
2000 Market Street
Suite 1400
Philadelphia, PA 19103
T : (215)561-3313
F : (215)246-0693
robertschall@cooperandschall.com
charlescooper@cooperandschall.com

DATED : _____ 7/8/18